**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED RENTALS NORTHWEST, INC.,**

**Plaintiff/Counter-Defendant,**

**vs.** **NO. CIV 08-0443 RB/DJS**

**FEDERATED MUTUAL INSURANCE CO.,**

**Defendant/Counter-Plaintiff/ Cross-Claimant,**

**and**

**INGRID MAGOFFE, as Personal Representative of the ESTATE OF ANTHONY MAGOFFE, Deceased, Individually, and as Next Friend of her minor children, ANTHONY JAMES MAGOFFE, and JIMMY MAGOFFE, AZUCENA MICHEL, as Personal Representative of the ESTATE OF CAMERINO MICHEL RAMERIZ, Deceased, Individually, and as Next Friend of her minor children, MELISSA ORNELAS MICHEL, ANTHONY ORNELAS MICHEL, and MELANIE ORNELAS MICHEL, and JAMES MAGOFFE, Individually,**

**Defendants/Cross-Defendants,**

**FEDERATED MUTUAL INSURANCE CO.,**

**Third-Party Plaintiff,**

**v.**

**YEAROUT MECHANICAL ENGINEERING,**

**Third-Party Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Federated Mutual Insurance

Company's (hereinafter "Federated") Motion for Partial Summary Judgment, filed January 6, 2009. Jurisdiction is founded upon 28 U.S.C. § 1332. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, Defendant Federated's Motion for Summary Judgment is **GRANTED**.

**I. Background.**

Plaintiff United Rentals Northwest, Inc. (hereinafter "United Rentals") was a defendant in the case of *Ingrid Magoffe, et. al v. JLG, Industries, Inc., et. al*, No. Civ. 06-0973 MCA/ACT. In the *Magoffe* case, the plaintiffs therein sued United Rentals for alleged product defects, negligence, failure to warn or provide directions for use, loss of consortium, and negligent infliction of emotional distress related to an accident involving two construction workers, employed by Yearout Mechanical Engineering (hereinafter "Yearout"), who were killed when a 50 foot scissor lift, leased to Yearout by United Rentals, fell over during a construction project at the Albuquerque Sunport.

Yearout is engaged in the business of providing mechanical contracting services. United Rentals is engaged in leasing and delivering equipment to construction contractors, workers, and others. On or about March 1, 2006, Yearout entered into an agreement with United Rentals to rent a scissor lift. Paragraph 3 of the agreement provides:

> INDEMNITY/HOLD HARMLESS. TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER AGREES TO INDEMNIFY, DEFEND AND HOLD UNITED HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, CLAIM, LOSS, DAMAGE OR COSTS (INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES, LOSS OF PROFIT, BUSINESS INTERRUPTION OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES, DAMAGES RELATING TO BODILY INJURY, DAMAGES RELATING TO WRONGFUL DEATH) CAUSED BY OR IN ANY WAY ARISING OUT OF OR RELATED TO THE TRANSPORTATION, OWNERSHIP OR RENTAL OF THE EQUIPMENT, INCLUDING WHENEVER SUCH LIABILITY, CLAIM LOSS, DAMAGE OR COST IS FOUNDED, IN WHOLE OR IN PART, UPON ANY

> NEGLIGENT OR GROSSLY NEGLIGENT ACT OR OMISSION OF UNITED OR THE PROVISION OF ANY ALLEGEDLY DEFECTIVE PRODUCT BY UNITED. THIS INDEMNITY PROVISION APPLIES TO ANY CLAIMS ASSERTED AGAINST UNITED BASED UPON STRICT OR PRODUCT LIABILITY CAUSES OF ACTION OR BREACH OF WARRANTY.

Paragraph 18 of the agreement provides:

> CUSTOMER'S INSURANCE COVERAGE. Customer agrees to maintain and carry, at its sole cost, adequate liability, physical damages, public liability, property damages and casualty insurance for the full replacement cost of the Equipment, including all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period. When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United. The Certificate of Insurance and policy shall provide that United shall receive not less than 30 days' notice prior to any cancellation of the insurance required hereunder.

Federated insured Yearout under a commercial general liability policy and an umbrella policy. United Rentals claimed to be an additional insured under those policies and requested coverage and a defense from Federated for the claims asserted in the *Magoffe* litigation. Federated agreed to defend United Rentals under a reservation of rights. United Rentals filed its Complaint for Declaratory Judgment on May 1, 2008. United Rentals seeks indemnification from Federated for all expenses, settlements, attorneys' fees, and any and all other damages associated with the defense and settlement of the *Magoffe* case. The *Magoffe* case recently settled. United Rentals continues to seek indemnification from Federated, arguing that it is insured by the Federated policies based on the rental agreement's indemnification clause. Federated argues that the indemnification clause violates New Mexico's statutory law and public policy and, therefore, is void.

**II. Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth

specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz*, 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Discussion.**

N.M. Stat. § 56-7-1 provides:

> A provision in a construction contract that requires one party to the contract to indemnify, hold harmless, insure or defend the other party to the contract, including the other party's employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of the state.

N.M. Stat. § 56-7-1(A) (1978). A "construction contract" is defined by the statute as:

> [A] public, private, foreign or domestic contract or agreement relating to construction, alteration, repair or maintenance of any real property in New Mexico and includes agreements for architectural services, demolition, design services, development, engineering services, excavation or other improvement to real property, including buildings, shafts, wells and structures, whether on, above or under real property.

N.M. Stat. § 56-7-1(E).

N.M. Stat. § 56-7-3 (2007), which became effective on June 15, 2007, after the contract at issue in this lawsuit was formed, provides:

> A provision of a lease or rental contract for equipment that requires a party to the agreement to indemnify, hold harmless, insure or defend the other party to the agreement, including the other party's officers, employees or agents against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to a person or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of this state.

*Id.*

This litigation presents two questions to be considered by the Court: (1) whether N.M. Stat. § 56-7-1, which renders any indemnification provisions in a "construction contract" void and unenforceable, applies to a lease agreement for a scissor lift that is used at a construction site, and (2) whether N.M. Stat. § 56-7-3 renders void and unenforceable the indemnification provisions of a rental contract formed prior to the effective date of the statute. Given the Court's determination that the lease agreement at issue in this case constitutes a "construction contract," a retroactivity analysis is unnecessary.

Although the New Mexico courts have not addressed whether N.M. Stat. §56-7-1 governs lease agreements for construction equipment, United States Magistrate Judge Richard L. Puglisi, sitting in diversity, addressed the issue in a Memorandum Opinion and Order issued September 9, 2008. *United Rentals Northwest, Inc. v. Yearout Mechanical, Inc.*, No. Civ. 08-0050 RLP/CD. Magistrate Judge Puglisi held that the lease of a scissor lift for use at a construction site was a "construction contract," as defined by N.M. Stat. § 56-7-1. United Rentals appealed Magistrate Judge Puglisi's decision in *United Rentals v. Yearout*, and the case is now before the Tenth Circuit Court of Appeals. This Court, finding *United Rentals v. Yearout* to have been correctly decided, adopts Magistrate Judge Puglisi's reasoning, as set forth in his September 9, 2008 Memorandum Opinion and Order.

The public policy underlying New Mexico's anti-indemnity statutes is to promote safety, and this goal supersedes public policy favoring freedom of contract. *Piña v. Gruy Petroleum Mgmt. Co.*, 139 N.M. 619, 621, 136 P.3d 1029, 1031 (N.M. Ct. App. 2006). In *Piña*, the New Mexico Court of Appeals, addressing N.M. Stat. § 56-7-2 (1978), the Oil Field Anti-Indemnity statute, stated:

> Section 56-7-2 is an example of an extraordinarily limited class of statutes whose very subject is the enforceability of contracts that contravene a specific public policy. In 1971, when the Legislature enacted the original version of Section 56-7-2, it was well settled that freedom of contract is a "paramount" public policy "not to be interfered with lightly." *Tharp v. Allis-Chalmers Mfg. Co.*, 42 N.M. 443, 449, 81 P.2d 703, 706 (1938). In enacting Section 56-7-2, our Legislature directly addressed the conflict between the policies generally favoring freedom of contract and the policy favoring safety at well sites and mines located in New Mexico. The Legislature expressly determined that, in this particular context, freedom of contract was to be subordinated to the policies furthered by the Oilfield Anti-Indemnity Statute. Where the Legislature has directly addressed the question of unenforceability on grounds of public policy, "the court is bound to carry out the legislative mandate with respect to the enforceability of the term." Restatement (Second) of Contracts § 178(2) cmt. A (1981).
>
> The Legislature's decision to expressly subordinate freedom of contract to well site safety is a persuasive indicator that the Legislature believed promoting safety at well sites to be an especially important public policy. The Legislature, which we presume was familiar with the strong public policy favoring freedom of contract, nevertheless, chose to elevate the public policy favoring safety at well sites over the public policies underlying freedom of contract. ...
>
> [The] safety concerns underlying Section 56-7-2 are not limited to the immediate parties to an indemnity agreement. By requiring an indemnitee to remain responsible for its own negligence, Section 56-7-2 protects third parties whose person or property would be placed at risk by the indemnitee's indifference to safety. Because Section 56-7-2 promotes the safety of third parties, an indemnity agreement prohibited by Section 56-7-2 is not a purely private matter.
>
> *Piña*, 139 N.M. at 623-24, 136 P.3d at 1033-34.

The reasoning of the New Mexico Court of Appeals in *Piña* applies equally to construction site safety addressed in N.M. Stat. §56-7-1. It is inconceivable that the New

Mexico Legislature, when contemporaneously enacting two anti-indemnity statutes, intended to give more protection to well and mine workers than to construction workers. Indeed, the purpose of N.M. Stat. §56-7-1 is to protect construction workers and future occupants of a building by ensuring that all those involved in its construction know that they will be held financially responsible for their negligence. *See Guitard v. Gulf Oil Co.*, 100 N.M. 358, 361-62, 670 P.2d 969, 972-73 (N.M. Ct. App. 1983). Proper maintenance and appropriate use of equipment is an important component of overall safety at a construction site. Allowing a company that leases equipment for use at construction sites to shield itself from liability for its own negligence through the use of indemnification clauses would undermine the important public policy goals underlying N.M. Stat. §56-7-1. Indeed, indemnity clauses in contracts related to construction "significantly interfere with New Mexico's efforts to produce safe workplaces and buildings," and, therefore, they are void and unenforceable. *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 219 (10th Cir. 1992).

The New Mexico legislature chose to broadly define a "construction contract" as any "contract or agreement *relating to* construction, alteration, repair or maintenance of any real property in New Mexico." N.M. Stat. §56-7-1(D) (emphasis added). The term "relating to" has been construed in other contexts, and is generally held to have a broad meaning unless a narrow construction is what the legislature intended. *Palmer v. St. Joseph Health Care P.S.O. Inc.*, 134 N.M. 405, 413, 77 P.3d 560, 568 (N.M. Ct. App. 2003) (discussing the terms "relating to" and "relates to" as found in the Airline Deregulation Act of 1978, ERISA preemption, and the Cigarette Labeling and Advertising Act of 1965). A lease agreement covering equipment used at a construction site clearly is an agreement "relating to construction," as defined in N.M. Stat.

§56-7-1(D). To hold otherwise would undermine the clear intent of the New Mexico legislature to promote safety at construction sites. *See Guitard*, 100 N.M. at 361-62, 670 P.2d at 972-73.

The courts of other states have reached differing conclusions when considering whether a contract for the rental of construction equipment is covered by a particular state's anti-indemnity law. *See American Pecco Corp. v. Concrete Building Systems Co.*, 392 F.Supp. 789 (N.D. Ill. 1975) (construing Illinois law; voided indemnity agreement in crane lease, holding that Illinois legislature manifested clear intent to void exculpatory clauses that purport to hold a person harmless for his own negligence in construction related activities); *Folkers v. Drott Mfg. Co.*, 504 N.E. 2d 132 (Ill. Co. App. 1987) (express indemnity provisions in rental contract between crane lessor and lessee fell squarely within anti-indemnity statute and were void as against public policy); *Aetna Cas. & Sur. Co. v. Marion Equipment Co.*, 894 P.2d 664 (Alaska 1995) (indemnity provision in lease of construction hoist governed by Alaska's anti-indemnity statute); *Elliot Crane Service Inc., et al. v. H.G. Hill Stores, Inc.*, 840 S.W. 2d 376 (Tenn. App. 1992) (an indemnity/hold harmless agreement printed on the back of "charge ticket" for the lease of crane and crane operator was an agreement "relative to the alteration, repair or maintenance of a building" and therefore void under Tennessee anti-indemnity statute); *Pritts v. J.I. Case Co.*, 310 N.W. 2d 261 (Mich. Ct. App. 1981) (court refused to extend Michigan anti-indemnity statute to construction lease of a travel lift); *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, 713 P.2d 766 (Wyo. 1986) (oilfield anti-indemnity statute did not apply to contract to furnish caterpillar tractors to dig holding pits for waste water and oil created by fire at oil facility, as those services were not sufficiently related to well drilling, the activity covered by the statute); *Palmour v. Gray Ins. Co.*, 731 So.2d 911 (La. Ct. App. 1999)(Louisiana oil-field anti-indemnity statute did not apply

to an agreement to lease a cherry picker crane for an unnamed purpose); *McMunn v. Hertz Equipment Rental Corp.*, 791 F.2d 88, 93 (7th Cir. 1986) (recognizing that the purpose of the Indiana anti-indemnity statute was to increase safety at construction sites, court refused to apply the statute to indemnity agreement in lease of a bob-cat loader, which could be leased for non-construction uses, such as snow removal). Although state courts have reached various conclusions in applying their states' unique anti-indemnity statutes, the overarching public policy behind all anti-indemnity statutes is to promote safe working conditions. This Court, therefore, concludes that, given New Mexico's clear preference in favor of promoting safety at construction sites, N.M. Stat. §56-7-1 should be interpreted broadly so as to provide a strong incentive to all those whose contractual agreements relate to construction to promote safe working conditions at construction sites. *Piña*, 139 N.M. at 621, 136 P.3d at 1031.

United Rentals argues that the enactment of anti-indemnification provisions for rental or lease agreements for equipment, i.e., N.M. Stat. § 56-7-3, would have been "completely unnecessary" if lease agreements for equipment used at construction sites were covered by N.M. Stat. §56-7-1. The Court finds this argument unpersuasive. There is substantial overlap between N.M. Stat. §56-7-1 and N.M. Stat. § 56-7-3. Indeed, while N.M. Stat. §56-7-1 applies to the subset of rental or lease agreements for equipment used at construction sites, N.M. Stat. § 56-7-3 expanded the scope of New Mexico's public policy to void all indemnity provisions in rental or lease agreements for equipment, except those specifically exempted in the statute. This expansion, however, does not alter the fact that, prior to the enactment of N.M. Stat. § 56-7-3, the lease of equipment for use at a construction site was an activity related to construction, as defined by N.M. Stat. §56-7-1.

## IV. Conclusion.

Pursuant to N.M. Stat. §56-7-1, the anti-indemnification provisions at issue in this lawsuit are void and unenforceable as a matter of public policy.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Federated's Motion for Summary Judgment is **GRANTED**.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**